In The

Court of Appeals

For The

First District of Texas

____________

NO. 01-01-00948-CV

____________


IN RE DANIEL S. CARTWRIGHT, Relator 






Original Proceeding on Petition for Writ of Mandamus






O P I N I O N

 Relator, Daniel S. Cartwright, filed a petition for writ of mandamus challenging the
trial court's order appointing an arbitrator other than the one named in the parties' agreement
to arbitrate and, in the alternative, challenging the trial court's order appointing an arbitrator
who had previously acted as a mediator in the same parties' dispute regarding possession of
their child. We deny writ on the first issue and grant writ on the second.


BACKGROUND


 Daniel Cartwright and Gwyn Cartwright were divorced in December 1997. In an
agreement incident to divorce (AID), they agreed that, if a claim or controversy arose out of
the final decree or the AID, it would be mediated as provided in chapter 154 of the Texas
Civil Practices and Remedies Code with James Patrick Smith and that "[i]f the parties cannot
resolve the matter through mediation, then JAMES PATRICK SMITH shall be the arbitrator
to arbitrate all disputes." In October 1999, Gwyn filed a lawsuit in the 165th Civil District
Court against Daniel and others, asserting property claims. In January 2001, Daniel filed a
suit affecting the parent-child relationship (SAPCR) under the original cause number 96-47718 in the 245th District Court, seeking to modify his possession of and access to the
parties' child. The 165th District Court concluded that Gwyn's property claims against
Daniel were for breach of the AID and transferred that portion of the case to the 245th
District Court, where the case was given the number 96-47718-B (the B-case). 

 Daniel filed a motion to compel arbitration in the B-case in accordance with the AID. 
At a hearing on March 13, 2001, Gwen agreed to participate in a mediation of the property
issues, but objected to arbitration on the basis that the agreement was not for binding
arbitration and, therefore, arbitration would be a waste of time. (1) Gwyn also objected to
Smith as the arbitrator. On March 22, 2001, the trial court signed an order compelling
mediation/arbitration. The court ordered the parties to mediate and, if necessary, to arbitrate
all contractual and property issues with Smith "no later than May 15, 2001." The order
compelling mediation/arbitration bore the cause number 1996-47718. 

 On April 17, in a letter to Smith, Daniel's counsel indicated that the mediation was
rescheduled to May 3 and the arbitration to May 4. (2) On April 18, Gwyn's counsel wrote
Smith, saying that he agreed to mediate on May 3, but that he considered May 4 too soon to
arbitrate the case due to some outstanding discovery. He also informed Smith that Daniel's
counsel opposed the motion to extend the time of the arbitration. On April 19, Daniel's
counsel wrote Smith to say, "I believe we should go forward with the arbitration on May 4th
as scheduled." On April 23, Daniel's counsel wrote Smith, defending his client's compliance
with discovery matters and again stating that he thought the mediation and arbitration should
proceed as previously scheduled. On April 26, in a hearing before Smith, Gwyn's counsel
indicated that he had filed a motion asking the trial court to extend the arbitration deadline,
but that the court had not given him a hearing on the motion. 

 On May 2, Daniel's counsel wrote Smith, saying there was confusion regarding the
dates for mediation and arbitration, that Gwyn's counsel had complained about the May 4
arbitration, and that Daniel's counsel had learned that Gwyn's counsel had issued a subpoena
for the appearance at the arbitration hearing of a witness whom Daniel's counsel had been
trying to depose. Daniel's counsel proposed taking the witness's deposition and said the
arbitration could be conducted "as soon as reasonably possible" following the deposition. 
In the letter, he said he had spoken with Gwyn's counsel that same morning to reschedule the
mediation "closer to the arbitration" and that Gwyn's counsel said he intended to go forward
with the arbitration as scheduled. 

 On May 3, Gwyn's counsel, at Smith's office with Gwyn and a court reporter, made
a certificate of non-appearance in which he stated that he and Gwyn showed up in good faith
to mediate; that neither Daniel, his counsel, nor Smith had appeared; that the mediation had
apparently been cancelled; and that Gwyn's counsel had received no notice of the
cancellation. Gwen's counsel attached, as exhibits, the correspondence from the attorneys
to Smith, the order compelling mediation, an unsigned notice of mediation, and one page of
the transcript of the April 26 hearing. 

 Meanwhile, a notice of intent to dismiss had been sent by the district clerk to counsel
for both parties on March 22. On April 20, the B-case was dismissed for want of
prosecution. 

 In a telephone conference on August 22, the trial court instructed the parties to
complete arbitration by September 7. The trial court issued an order on August 23 ordering
mediation on September 4 and arbitration to be completed by September 7, with the
arbitrator's rulings delivered to the court by September 10. On August 31, Daniel filed a
motion for continuance that stated that Daniel's lead counsel was scheduled for trial in
another case on September 4. The continuance was granted. 

 On September 26, the date on which mediation was to begin, Smith conducted a
hearing on the record. At this hearing, Smith learned, apparently for the first time, that the
B-case had been dismissed for want of prosecution in April. Daniel's counsel argued that,
because of the dismissal, there were no property claims before the court. Gwyn's counsel
stated that he had only recently learned of the dismissal from Daniel's counsel. Various
accusations of unprofessional behavior were exchanged between counsel. Smith concluded
that, in light of the dismissal of the property suit--the B-case--there was doubt about his
jurisdiction to proceed with the arbitration, as well as doubt about the validity of any orders
he had issued in the previous months. As a result, the mediation did not go forward. Neither
counsel informed Smith that, on September 18, Gwyn had filed an amended petition
containing Gwyn's claims in both the SAPCR and property suit.

 On October 11, the trial court issued an order for the parties to arbitrate their claims
before the Honorable Mary Sean O'Reilly beginning on October 20 and continuing October
21 and 22 until conclusion. Daniel objected that the trial court could not appoint any
arbitrator other that one named in the AID and that, if the court could name another
arbitrator, it could not be Judge O'Reilly because she had mediated the parties' dispute over
possession of their child in the SAPCR and, as a mediator, she had had access to privileged
information. 

 At a hearing on October 18 on Daniel's objections, the trial court stated that another
arbitrator had been appointed because of the delays in arbitrating with Smith and, because
Smith was at that time out of the country, he would not be available to arbitrate the property
issues before October 25, the date set for trial and the ultimate arbitration deadline set by the
court. The court reminded the parties that they had agreed to each of the dates set for
arbitration and said that both sides were guilty of dragging out the arbitration process. 
Regarding the objection to Judge O'Reilly, the court said, 

 The arbitrator mediated the child custody issues, nothing dealing with
property. As far as the Court is concerned, as far as this Court knows, unless
there is some proof otherwise, no property issues have been before this
mediator. So this Court's order to mediate with that arbitrator on those dates
will stand. 


Following this ruling, Daniel filed this petition for writ of mandamus and an interlocutory
appeal. (3)

DISCUSSION


 Mandamus issues only to correct a clear abuse of discretion or the violation of a duty
imposed by law when there is no other adequate remedy at law. Johnson v. Fourth Court of
Appeals, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding). A trial court abuses its
discretion only when its decision is so arbitrary and unreasonable that the decision amounts
to a clear and prejudicial error of law. Cent. Nat'l Ins. Co. of Omaha v. Lerner, 856 S.W.2d
492, 494 (Tex. App.--Houston [1st Dist.] 1993, orig. proceeding). 

Appointment of Arbitrator Other Than Smith

 In his first issue, Daniel contends that the trial court abused its discretion in appointing
a binding arbitrator other than the individual expressly agreed to in the parties' agreement
to arbitrate. Daniel argues that the trial court may not appoint a different arbitrator unless
the appointment complies with section 171.041(b) of the Texas Arbitration Act (TAA). (4) 
Section 171.041(b) provides:

 The court, on application of a party stating the nature of the issues to be
arbitrated and the qualifications of the proposed arbitrators, shall appoint one
or more qualified arbitrators if: 

 . . . 

 (3) an appointed arbitrator fails or is unable to act and a successor
has not been appointed. 


Tex. Civ. Prac. & Rem. Code Ann. § 171.041(b) (Vernon Supp. 2002). Daniel complains
that no party made the required application stating the nature of the issues to be arbitrated
and the qualifications of the proposed arbitrator and, in addition, the named arbitrator was
not unable to act. Daniel also contends that it was improper for the trial court to impose a
timetable for the arbitration. 

 The Texas Family Code authorizes arbitration, upon the agreement of the parties, on
the issues involved in the dissolution of the marriage and issues concerning the parent-child
relationship. See Tex. Fam. Code Ann. § 6.601 (dissolution of the marriage), § 153.0071(a)
(SAPCR) (Vernon 1998 & Supp. 2002). Under the Family Code, an arbitration agreement
must state whether the arbitration is binding or non-binding. Id., §§ 6.601, 153.0071(a). 
However, the Family Code does not make provisions for the judge to act if the appointed
arbitrator fails or is unable to act. 

 We have found only one case involving arbitration under the Family Code. In Cooper
v. Bushong, 10 S.W.3d 20 (Tex. App.--Austin 1999, pet. denied), the parties agreed to
submit a paternity dispute and termination of parental rights to binding arbitration. Id. at 22-23. After the arbitrator made an award, one of the parties challenged the validity of the
award. Id. at 23. The court of appeals cited the TAA for the requirements for setting aside
an arbitration award, modifying an award, and confirming an award. (5) Id. at 24-26. We agree
with the Cooper court that if, in a family law case, an arbitration is binding, as it was in
Cooper, it is appropriate to follow the TAA.

 The TAA does not exclude family law claims from its coverage. See Tex. Civ. Prac.
& Rem. Code Ann. § 171.002(a) (Vernon Supp. 2002). Therefore, the TAA applies to
Family Code arbitration if the arbitration agreement specifies that the arbitration is binding. 
However, the TAA, by its own terms, cannot apply to non-binding Family Code arbitration. 
See, e.g., Tex. Civ. Prac. & Rem. Code Ann. §§ 171.053-.054, 171.081, 171.087-.092
(Vernon Supp. 2002) (pertaining to the award and its modification or correction, vacation,
confirmation, and enforcement). The TAA necessarily contemplates that the arbitration
award be binding and makes no provision for a non-binding arbitration procedure. Porter
& Clements, L.L.P. v. Stone, 935 S.W.2d 217, 221 (Tex. App.--Houston [1st Dist.] 1996, no
writ). At most, those provisions in the TAA that may be applied to non-binding arbitration
should be used as guidelines for the arbitration, not as controlling law. 

 Because the arbitration agreement in this case did not state that the arbitration would
be binding, we hold that, as a matter of law, the agreement was for non-binding arbitration. 
See Tex. Fam. Code Ann. § 6.601. (6) Therefore the TAA does not apply. 

 The trial court has the inherent authority to control the disposition of cases on its
docket. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 240 (Tex. 2001). Accordingly, the trial
court did not abuse its discretion in setting a reasonable deadline, requiring the parties to
complete arbitration before the date of their trial setting. Furthermore, when the parties
failed to proceed with the arbitration after a delay of approximately seven months, the trial
court did not abuse its discretion in appointing a different arbitrator.

 We overrule Daniel's first issue. 

The Appointment of O'Reilly as Arbitrator

 In his second issue, Daniel contends that the trial court abused its discretion in
appointing Judge O'Reilly as arbitrator after she had served as the parties' mediator in the
SAPCR. Daniel argues that O'Reilly is disqualified to act as an impartial arbitrator because
of privileged information to which she was privy in her role as mediator. 

 Section 154.073(a) of the Texas Civil Practice and Remedies Code provides that all
communications made to a mediator are confidential, are not subject to disclosure, and may
not be used as evidence against the participant in any judicial or administrative proceeding. 
Tex. Civ. Prac. & Rem. Code Ann. § 154.073(a) (Vernon Supp. 2002). In addition, all
matters concerning a mediation are confidential and may not be disclosed even to the
appointing court. Tex. Civ. Prac. & Rem. Code Ann. § 154.053(c) (Vernon Supp. 2002). 
Thus, a mediator is in the position of receiving confidential information from the parties that,
by statute, may not be revealed to the court or to any other person. If the mediator is later
appointed to be the arbitrator between the same parties, as an arbitrator, he or she is likely
to be in the possession of information that either or both of those parties would not have
chosen to reveal to an arbitrator. 

 Gwyn argues that (1) Daniel's complaint is too general and the trial court has not seen
or ruled on the supposed confidential information; (2) as a former judge, O'Reilly is capable
of disregarding any information that is confidential; and (3) O'Reilly's service as both
mediator and arbitrator is no different from the proposed service of Smith in both capacities. 

 First, requiring Daniel to present prejudicial, confidential information to the trial court
in chambers for a ruling on his objection to O'Reilly would defeat the purpose of section
154.053. The mediation process encourages candid disclosures, including confidential
information, to a mediator. It is the potential for the use of that confidential information that
creates the problem when the mediator, over the objection of one of the parties, becomes the
arbitrator of the same or a related dispute. It would be improper for a mediator to disclose
any confidential information to another arbitrator of the parties' dispute. Therefore, it is
improper for the mediator to act as the arbitrator in the same or a related dispute without the
express consent of the parties.

 Second, we know of no basis for assuming that judges "routinely see confidential,
prejudicial information during pre-trial proceedings," as asserted by Gwyn, but if the parties
reveal such information to the trial court, they do so at their peril and with the knowledge that
the judge will be deciding the merits of their dispute. That argument cannot justify
appointing a mediator to function as an arbitrator in the same or a related dispute. 

 Finally, the parties selected Smith to serve as mediator and, if the issues were not
resolved, to serve as arbitrator. Therefore, the parties would have known, when they
disclosed information to Smith in private sessions, that the information could be used by him
in making his award as arbitrator. The parties then could have made informed decisions
about what to disclose to the mediator. (7) Because they did not know, when O'Reilly mediated
the SAPCR, that she would also later be their arbitrator, the parties had no opportunity to
make such an informed decision during the mediation. 

 For these reasons, the trial court, in appointing O'Reilly, the parties' mediator, to
serve as arbitrator, abused its discretion. 

CONCLUSION


 We deny the petition for writ of mandamus as it relates to the appointment of an
arbitrator other that James Patrick Smith. However, in light of the parties' agreement to
mediate, and, if necessary, to arbitrate their property dispute with James Patrick Smith, our
ruling is not to be understood as a basis for appointing a substitute mediator/arbitrator unless
James Patrick Smith is unable to act as the parties' mediator/arbitrator prior to any new trial
setting.

 We conditionally grant the petition for writ of mandamus only as it relates to the
appointment of the Honorable Mary Sean O'Reilly as arbitrator of the parties' property and
contractual disputes. We direct the trial court to vacate its October 11, 2001 order appointing
the Honorable Mary Sean O'Reilly as arbitrator. We are confident that the trial court will
promptly comply with our opinion. The writ will issue only if it does not. 

 

 Sam Nuchia

 Justice


Panel consists of Justices Cohen, Wilson, and Nuchia.

Publish. Tex. R. App. P. 47. 
1. Gwyn agreed that one issue, the nature and amount of attorney referral fees to be
received by Daniel, was subject to binding arbitration in the AID, but she argued that the
remaining property issues were not.
2. The record does not show the originally scheduled date of the mediation/arbitration. 
3. Daniel's interlocutory appeal has been dismissed for lack of jurisdiction. See
Cartwright v. Cartwright, no. 01-01-00946-CV (Tex. App.--Houston [1st Dist.] Mar. f28,
2002, no pet. h.) (not designated for publication).
4. Tex. Civ. Prac. & Rem. Code Ann. § 171.001-.098 (Vernon Supp. 2002).
5. In Koch v. Koch, 27 S.W.3d 93 (Tex. App.--San Antonio 2000, no pet.), the court of
appeals analyzed the trial court's vacation of the arbitration award under chapter 171 of the
Civil Practice and Remedies Code. Id. at 96-97. However, in Koch, the agreement to
arbitrate was contained in the parties' prenuptial agreement, which was signed in 1986 and
therefore predated the arbitration provision in the Family Code and the enactment of the
Texas Alternative Dispute Resolution Act. Section 6.601 of the Family Code became
effective on April 17, 1997. See Act of April 3, 1997, 75th Leg., R.S., ch. 7, § 1, 1997 Tex.
Gen. Laws 8, 31, 43 (the recodification of the Texas Family Code). The Texas Alternative
Dispute Resolution Act became effective on June 20, 1987. See Alternative Dispute
Resolutions Act, 70th Leg., R.S., ch. 1121, § 1, 1987 Tex. Gen. Laws 3841, 3844 (to be
codified at Tex. Civ. Prac. & Rem. Code § 154.001-.073.). 
6. Section 6.601(a) provides that, in a suit for the dissolution of a marriage, the written
agreement to arbitrate "must state whether the arbitration is binding or nonbinding," and
subsection (b) provides, "If the parties agree to binding arbitration, the court shall render an
order reflecting the arbitrator's award." Tex. Fam. Code Ann. § 6.601 (Vernon 1998). 
7. The Ethical Guidelines for Mediators, promulgated by the Alternative Dispute
Resolution Section of the Texas State Bar, provides guidance in such proceedings in
guideline number 12, which states, "A person serving as a mediator generally should not
subsequently serve as a judge, master, guardian ad litem, or in any other judicial or quasi-judicial capacity in matters that are the subject of the mediation." The comment to this
guideline provides, 


 [W]here an impasse has been declared at the conclusion of a mediation, the
mediator if requested and agreed to by all parties, may serve as the arbitrator
in a binding arbitration of the dispute . . . . 


Ethical Guidelines for Mediators, Alternative Dispute Resolution Section of the Texas State
Bar.